WILLIAM B. HELFAND #16686
DOUGLAS C. SMITH #10805
ANDREW R. WELCH, #14028
**LEWIS BRISBOIS BISGAARD & SMITH LLP**
6550 South Millrock Drive, Suite 200
Salt Lake City, Utah 84121-2318
Telephone: 801.562.5555
Facsimile: 801.562.5510
Bill.Helfand@lewisbrisbois.com
Douglas.Smith@lewisbrisbois.com
Andrew.Welch@lewisbrisbois.com
*Attorneys for Defendant Colliers International Intermountain, LLC,*
*Colliers International Holdings (USA), Colliers International Group,*
*Lew Cramer, Matthew Hawkins, Gil Borok, and David Josker*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| VISHWA N. KHANNA; TOP CALIBER VENTURES, LLC; MELODY R. SQUIRES; THE SQUIRES FAMILY TRUST; KARL BODILY; LOIS BODILY; NICHOLAS KAPRELIAN'; DANIELLE KAPRELIAN, <br><br> Plaintiffs, <br><br> V. <br><br> COLLIERS INTERNATIONAL GROUP, INC.; COLLIERS INTERNATIONAL HOLDINGS (USA), INC.; COLLIERS INTERNATIONAL INTERMOUNTAIN, LLC; KEVIN LONG; MILLCREEK COMMERCIAL PROPERTIES, LLC; MILLROCK INVESTMENT FUND 1, LLC; MILLROCK INVESTMENT FUND 1 MANAGEMENT, LLC; BLAKE MCDOUGAL; SPENCER TAYLOR; SPENCER STRONG; BRENT SMITH; MARK MACHLIS; GREEN IVY REALTY, INC.; 13 INVESTMENTS, LLC; LADY MIRA BLUE MACHLIS; THOMAS SMITH; LEW CRAMER; MATTHEW HAWKINS; GIL BOROK; DAVID JOSKER; JERALD ADAM LONG; KGL | **DEFENDANTS COLLIERS INTERNATIONAL GROUP, INC., COLLIERS INTERNATIONAL HOLDINGS (USA), INC., COLLIERS INTERNATIONAL INTERMOUNTAIN, LLC, GIL BOROK, MATTHEW HAWKINS, DAVID JOSKER, AND LEW CRAMER'S MOTION TO DISMISS** <br><br> Civil No. 2:25-cv-00906-HCN-CMR <br><br> Judge Howard C. Nielson, Jr. <br><br> Magistrate Judge Cecilia M. Romero |

1

| | |
|---|---|
| REAL ESTATE DEVELOPMENT, PLLC; SMART COVE, LLC; GTR HOLDINGS, LLC; LONG HOLDINGS, LLC; KGL ADVISORS, LLC; MARY STREET; CAMS REALTY, LLC; MOUNTAIN WEST COMMERCIAL, LLC; STEVE CATON; ADP-MILLCREEK 1, LLC; CONSTANCE L. GREENAWALT; EASTERN 1031 STARKER EXCHANGE, LLC; EASTERN 1031 STARKER EXCHANGE, LLP; SCOTT RUTHERFORD; EQUITY SUMMIT GROUP; ELEVATED 1031, <br><br> Defendants. | |

Defendants Colliers International Intermountain, LLC, Colliers International Holdings (USA), Colliers International Group ("Colliers Defendants"), Lew Cramer, Gil Borok, Matthew Hawkins, and David Josker hereby submit this Motion to Dismiss (the "Motion") various claims contained in Plaintiffs' First Amended Complaint ("FAC").

## RELIEF REQUESTED AND GROUNDS

Colliers Defendants move to dismiss Plaintiffs' first, second, third, fourth, fifth, thirteenth, fifteenth, and sixteenth causes of action for failure to state claim upon which relief can be granted. First, Plaintiff's Securities Exchange Act claims are barred by the Act's statute of repose. Second, Tenant in Common ("TIC") agreements are not "securities" under Utah law, and Plaintiffs failed to sufficiently plead alternative state statutes. Plaintiffs have also failed to plead other state securities claims with sufficient particularity. If TIC agreements are determined by this Court to be securities, then Plaintiffs' RICO claims are barred under the RICO statute. Third, Plaintiffs Vishwa Khanna, Melody Squires, Karl Bodily, Nick Kaprelian, and Danielle Kaprelian lack standing to bring elder abuse claims as the FAC admits their TIC interests either were purchased through a business entity, or the Plaintiffs were not vulnerable adults.  Fourth, Plaintiffs' aiding and abetting tortious conduct claim should be dismissed because no such cause of action exists

2

under Utah law. Finally, Plaintiffs do not plead sufficient facts to support their negligence claim against Defendants Gil Borok, Matthew Hawkins, and David Josker.

## **STATEMENT OF FACTS**

1.      Plaintiffs filed their original Complaint and FAC in this matter on November 4, 2025.[1]

2.      Plaintiffs allege various causes of action related to their purchase of TIC ownership interests in the Romeoville Property.[2]

3.      Plaintiffs allege Gil Borok and Matthew Hawkins are managers of Colliers International Intermountain, LLC.[3]

4.      Plaintiffs allege Colliers' website describes Gil Borok as President and CEO of the USA division of Colliers.[4]

5.      Plaintiffs allege Colliers' website describes Matthew Hawkins as Vice President and Legal Counsel for Colliers International Group, Inc., with responsibilities such as oversight of legal, corporate, and regulatory matters.[5]

6.      Plaintiffs allege Colliers' website describes David Josker as President of the Western Region of Brokerage for Colliers.[6]

7.      Plaintiffs allege David Josker approved draw payments for sales agents selling TIC offerings through the Colliers/Long TIC Program.[7]

---

[1] *See* Dkt. No. 2, Dkt. No. 7.
[2] *See* FAC ¶¶ 443-605.
[3] FAC at ¶ 11.
[4] FAC at ¶ 12.
[5] FAC at ¶ 13.
[6] FAC at ¶ 15.
[7] FAC at ¶ 16.

8.    Plaintiffs allege Lew Cramer was an agent and representative of Colliers.[8]

9.    Plaintiffs allege Lew Cramer was involved in the development of the Colliers/Long TIC Program.[9]

10.    Plaintiffs allege Lew Cramer eventually became CEO of the Utah division of Colliers.[10]

11.    Plaintiffs allege Lew Cramer, on Colliers' behalf, approved terms with Kevin Long and his affiliates by which Colliers would partner with Long in the Colliers/Long TIC Program.[11]

12.    Plaintiff Karl Bodily was aged 54 years old at the time he purchased TIC ownership in the Romeoville Property.[12]

13.    Plaintiffs Nicholas and Danielle Kaprelian were respectively aged 41 and 40 years old at the time they purchased TIC ownership in the Romeoville Property.[13]

14.    Plaintiff Vishwa Khanna purchased TIC ownership in the Romeoville Property through Top Caliber Ventures, LLC.[14]

15.    Plaintiff Melody Squires purchased TIC ownership in the Romeoville Property through the Squires Family Trust.[15]

16.    Plaintiffs purchased the following TIC percentages in the Romeoville Property:

    a.    Plaintiffs Karl and Lois Bodily, in their own names, purchased a 3.721% interest in the Romeoville Property on or about July 7, 2020.[16]

---

[8] FAC at ¶ 55.
[9] FAC at ¶ 65.
[10] FAC at ¶ 116.
[11] FAC at ¶ 127.
[12] FAC at ¶ 74.
[13] FAC at ¶ 75.
[14] FAC at ¶ 306.
[15] FAC at ¶ 307.
[16] FAC at ¶ 314.

    b.  Plaintiffs Nicholas and Danielle Kaprelian, in their own names, purchased a 3.00% interest in the Romeoville Property on or about July 10, 2020.[17]

    c.  Plaintiff Vishwa Khanna **through Top Calber Ventures, LLC**, purchased a 28.067% interest in the Romeoville Property on or about August 21, 2020.[18]

    d.  Plaintiff Melody Squires through the Squires Family Trust purchased a 4.812% interest in the Romeoville Property on or about August 3, 2020.[19]

17.    Plaintiffs allege that each co-owner held a separate deeded interest in the property and could buy and sell that interest independently of the other owners.[20]

18.    Plaintiffs allege that CAMS Realty performed lease-administration and property-management functions subject to owner votes.[21]

19.    Plaintiffs allege that owners of the Romeoville Property were required by the TIC Agreements to participate in management decisions concerning the property.[22]

20.    Plaintiffs allege that Defendants represented participation in a capital call would increase ownership percentages and that, after declining to participate, Mr. Khanna's ownership interest was reduced from approximately 28 percent to below 20 percent.[23]

21.    Plaintiffs allege that investment in TIC interests in the Romeoville Property was a security as defined in 15 U.S.C. § 77b(a)(1).[24]

---

[17] FAC at ¶ 314.
[18] FAC at ¶ 314 (emphasis added).
[19] FAC at ¶ 314.
[20] FAC at ¶ 153.
[21] FAC at ¶ 63.
[22] FAC at ¶ 385(d).
[23] FAC at ¶¶ 331-336.
[24] FAC at ¶ 443.

22.     Plaintiffs allege that on October 14, 2022, Vishwa Khanna received an email stating that HSH had failed to make rent payments for several months and that no functional resolution had been reached.[25]

## ARGUMENT

**I.     Standard of Review**

In reviewing a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the court "accepts as true well-pleaded factual allegations and views the allegations in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor."[26] However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.[27] A court does not accept legal conclusions as true. Rather, a complaint "must be supported by factual allegations" that make out a viable claim.[28] Allegations must "raise a right to relief above the speculative level."[29] The Court is "not bound by conclusory allegations, unwarranted inferences, or legal conclusions."[30]

---

[25] FAC at ¶ 323.

[26] *Jenkins v. Haaland*, No. 2:21-CV-00385, 2022 WL 1913918, at *3 (D. Utah Apr. 28, 2022).

[27] *Schadel v. Gochis*, No. 2:19-CV-00494, 2020 WL 4500644, at *3 (D. Utah Aug. 5, 2020). Accord. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[28] *Iqbal*, 556 U.S. at 679.

[29] *Bick v. Utah State Univ.*, No. 1:19-CV-00084-DBB, 2021 WL 2379600, at *1 (D. Utah June 10, 2021).

[30] *Hackford v. Babbitt*, 14 F.3d 1457, 1465 (10th Cir. 1994).

**II.      The Court lacks personal jurisdiction over Colliers International Holdings and Colliers International Group, Inc.**

Due process requires minimum contacts between the forum state and defendants before a court can exercise personal jurisdiction.[31] For general jurisdiction, courts require that the defendant's affiliations with the forum state to be so continuous and systematic as to render them "essentially at home" in the state.[32] This can be established by where a corporation is domiciled or has its principal place of business.[33] Courts can also have specific jurisdiction where the defendant has directed activities toward the forum state so as to purposefully avail "itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws."[34]

Neither Colliers International Holdings nor Colliers International Group are domiciled in or have their principal place of business in Utah, and Plaintiffs do not allege that they do. Nor do Plaintiffs allege that either of these entities directed activity towards the forum state of Utah. Instead, Plaintiff has only alleged that Colliers International Holdings is a majority member of Colliers International Mountain and is a subsidiary of Colliers International Group.[35] While the FAC alleges that Colliers International Group controlled investment services and uses a shared website and common branding, these activities are insufficient to establish minimum contacts based on Colliers International Intermountain' s contacts.[36]

---

[31] *Synergetics v. Marathon Ranching Co.*, 701 P.2d 1106, 1110 (Utah 1985).

[32] *Old Republic Insurance Company v. Continental Motors, Inc.*, 877 F.3d 895 (2017).

[33] *Id.*

[34] *MFS Series Trust III ex rel. MFS Municipal High Income Fund v. Grainger*, 96 P.3d 927, 931 ¶ 10 (Utah 2004).

[35] FAC at ¶ 1.

[36] FAC at ¶¶ 1 and 5.

However, a parent-subsidiary relationship alone is insufficient to establish minimum contacts.[37] "[A] holding or parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity."[38] "[C]orporate veils exist for a reason and should be pierced only reluctantly and cautiously. The law permits the incorporation of businesses for the very purpose of isolating liabilities among separate entities."[39]

Here any acts directed toward Utah would be through Colliers International Intermountain. Plaintiffs do not allege any specific acts by Colliers Holdings or Colliers International Group. Nor do Plaintiffs allege control over Colliers International Intermountain's day-to-day operations. Because Plaintiff has failed to plead minimum contacts with either entity, Colliers International Holdings and Colliers International Group are not proper defendants in this lawsuit and should be dismissed.

### III.    The Court lacks personal jurisdiction over Gil Borok, Matthew Hawkins, and David Josker.

The FAC alleges that these individuals reside in Canada, California, and California respectively.[40] The FAC fails to allege any acts directed toward Utah by these individuals other than their various alleged positions with different Colliers entities.[41] However, "Mere corporate status can never be the basis for jurisdiction; '[e]ach defendant's contacts with the forum State must be assessed individually,'"[42] "'Where the acts of individual principals of a corporation in the

---

[37] *Quarles v. Fuqua Industries, Inc.*, 504 F.2d 1358 (10th Cir. 1974).

[38] *Id.* at 1362.

[39] *Cyprus Amaz Minerals Company v. TCI Pacific Communications, LLC*, 28 F.4th 996, 1007 (10th Cir. 2022).

[40] FAC at ¶¶ 9, 10, 14.

[41] FAC at ¶¶ 9-20

[42] *Snap Advances, LLC v. Shg of Illinois, LLC*, 2019 WL 7505555 at *1 (D. Utah Feb. 12, 2019) (quoting *MFS Series Tr. III ex rel. MFS Mun. High Income Fund v. Grainger*, 2004 UT 61, ¶ 11, 96 P.3d 927 (quoting *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)).

jurisdiction were carried out solely in the individuals' corporate or representative capacity, the corporate structure will ordinarily insulate the individuals from the court's jurisdiction.'"[43]

### IV. Plaintiffs' First and Second Causes of Action Are Barred by the Exchange Act's Statute of Repose.

Plaintiffs' first and second causes of action allege the Colliers Defendants and Lew Cramer violated the Securities Exchange Act.[44] These causes of action are barred under the Securities Exchange Act's statute of repose. Under 28 U.S.C.A. § 1658(b):

> (b) Notwithstanding subsection (a), a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of—
>
> > (1) 2 years after the discovery of the facts constituting the violation; or
> > (2) 5 years after such violation.[45]

Here, Plaintiffs filed their Complaint on October 14, 2025.[46] Plaintiffs allege they purchased their respective TIC interests in the Romeoville Property in July and August of 2020.[47] The Securities Exchange Act's statute of repose is clear that actions may not be brought 5 years after an alleged violation of the Act. "[T]he five-year statute of repose for securities fraud cases serves as an outer limit, unrelated to a plaintiff's knowledge of his or her claim, setting a five-year limitations period '[running] from the date of each alleged violation of Section 10(b).'"[48]

---

[43] *Id.* quoting *Ten Mile Indus. Park v. W. Plains Serv. Corp.*, 810 F.2d 1518, 1527 (10th Cir. 1987).

[44] FAC, ¶¶ 443-466.

[45] Under 28 U.S.C.A. § 1658(b).

[46] *See* Dkt. No. 2.

[47] FAC at ¶ 314.

[48] *Rycar Trust v. Yates Family Investments*, 799 F.Supp.3d 1178, 1192 (D. Utah 2025)(quoting *Hogan v. Pilgrim's Pride Corp.*, 73 F.4th 1150, 1156 (10th Cir. 2023)).

In the present case, Plaintiffs allege that Lew Cramer and the Colliers Defendants' fraudulent conduct and material misrepresentations caused Plaintiffs to purchase their TIC interests in the Romeoville Property.[49] Therefore, the statute of repose required Plaintiffs to file this action no later than July or August 2025, when the transaction and alleged violations of the Act occurred. As Plaintiffs filed this action in October 2025, their first and second causes of action are barred by the statute of repose and should be dismissed accordingly.

## V.    Plaintiff's Third, Fourth, and Fifth Causes of Action are barred by the State's Relevant Statutes of Limitations.

A.    Plaintiffs' state law claims under Utah, Illinois, and Florida are barred by each state's respective statute of limitations or repose.

Plaintiffs' third, fourth, and fifth causes of action alleging violation of the Utah Uniform Securities Act are barred by the Act's statute of repose. Section 61-1-22 of the UUSA states:

> (7)(a) An action may not be maintained to enforce liability under this section unless brought before the earlier of:
> (i) the expiration of five years after the act or transaction constituting the violation; or
> (ii) the expiration of two years after the discovery by the plaintiff of the facts constituting the violation.[50]

The UUSA is clear that the statute of repose begins to toll after the act or transaction constituting the alleged violation occurs. Similarly, Illinois maintains a five-year statute of repose for securities causes of action. Under the Illinois Securities Law of 1953:

> "No action shall be brought for relief under this Section or upon or because of any of the matters for which relief is granted by this Section after 3 years from the date of sale; provided, that if the party bringing the action neither knew nor in the exercise of reasonable diligence should have known of any alleged violation of subsection E, F, G, H, I or J of Section 12 of this Act which is the basis for the action, the 3 year period provided herein shall begin to run upon the earlier of:
> (1) the date upon which the party bringing the action has actual knowledge of the alleged violation of this Act; or

---

[49] FAC at ¶¶ 443-466.
[50] Utah Code Ann. § 61-1-22.

(2) the date upon which the party bringing the action has notice of facts which in the exercise of reasonable diligence would lead to actual knowledge of the alleged violation of this Act; but in no event shall the period of limitation so extended be more than 2 years beyond the expiration of the 3 year period otherwise applicable."[51]

Florida has a similar 5-year statute of repose as well.[52]

Here, Plaintiffs allege they purchased their TIC interests in July or August of 2020.[53] Therefore, the transaction constituting the Colliers Defendants' alleged violation of state securities law occurred in July or August of 2020, and the statute of repose began to run at that time. Since Plaintiffs filed their original complaint in October of 2025, their third, fourth, and fifth causes of action are barred under the UUSA and Illinois Securities Law of 1953 five-year statutes of repose. The Utah, Illinois, and Florida statutes of repose required Plaintiff to bring their third, fourth, and fifth causes of action no later than August 2025, which they failed to do. Plaintiffs' Utah and Illinois state securities causes of action should be dismissed accordingly.

B.      <u>Plaintiff Khanna's New Jersey Claims (Causes of Action 3-5), to the extent that they are adequately plead, are barred by the statute of limitations and Plaintiff's lack of standing.</u>

Plaintiffs only reference New Jersey law passingly in a footnote. Plaintiffs' only ostensible explanation for these claims are that Plaintiff Khanna is a resident of New Jersey. However, Plaintiff Khanna does not have standing to bring this suit because he did not purchase the TIC, but rather Top Caliber Ventures, LLC purchased it.[54] Accordingly, Plaintiff Khanna is not the real party of interest for any claims arising from the purchase of the TIC interest.[55]  Because the FAC fails to specify Top Caliber's domicile, there is no basis for a New Jersey claim in this matter.

---

[51] 815 ILCS 5/13(D); *see also Blumenthal v. Flynn*, 2012 IL App (1st) 112306-U, ¶ 14.

[52] Fla. Stat. § 95.11(5)(f).

[53] FAC at ¶ 314.

[54] FAC at ¶ 314 (emphasis added).

[55] UT. R. Civ. P. 17(a); Fed. R. Civ. P. 17(a).

In addition, New Jersey has a 2-year statute of limitations.[56] Plaintiff bought his interest in 2020 but did not bring the original complaint until 2025.[57] The FAC makes clear that Plaintiff Khanna knew or should have known of his causes of action on October 14, 2022, when he received an email stating that "HSH had failed to make rent payments for several months and that no functional resolution had been reached with them."[58] Plaintiff Khanna alleges numerous violations regarding HSH as the basis for his decision to purchase this investment.[59]  By Plaintiffs' own allegations, the October 14, 2022 email provided notice that the tenant had ceased making payments and that no resolution had been reached. Finding out HSH had failed to pay and there was no viable resolution should trigger notice of any claim he may have had.

**VI.    Plaintiffs' Third, Fourth, and Fifth Causes of Action fail because Utah state securities law exempts TIC agreements and Plaintiffs fail to sufficiently plead other state statutes.**

A.    <u>TIC Agreements are not securities under Utah law.</u>

Under Utah law, TIC agreements are not securities. Under the Utah Uniform Security Act ("UUSA"), "security" includes notes, bonds, stocks, investment contracts, and other financial instruments. However, the Utah legislature has specifically excluded the sale of certain assets of the definition of a "security", including:

> (II) an undivided fractionalized long-term estate in real property that consists of 10 or fewer owners; or

> (III) an undivided fractionalized long-term estate in real property that consists of more than 10 owners if, when the real property estate is subject to a management agreement:(Aa) the management agreement permits a simple majority of owners of the real property estate to not renew or to terminate the management agreement at the earlier of the end of the management agreement's current term, or 180 days after the day on which the owners give notice of termination to the manager; and (Bb) the management agreement prohibits, directly or indirectly, the lending of the proceeds earned from the real property estate or the use or pledge of

---

[56] NJ Rev. Stat § 49:3-71.
[57] *See* supra notes 1, 16-19 and accompanying text.
[58] SOF at ¶ 22; FAC at ¶ 323
[59] FAC at P. 71.

its assets to a person or entity affiliated with or under common control of the manager.[60]

TIC agreements plainly fall under this latter category; therefore, Utah state securities statutes do not apply, and Plaintiffs have no state cause of action.[61]

Plaintiffs allege that each co-owner held a separate deeded interest in the property and could buy and sell that interest independently of the other owners.[62] Plaintiffs further allege that property-management functions were subject to owner votes and that owners were required to participate in management decisions concerning the property.[63] Plaintiffs also allege that ownership percentages changed based upon owner decisions regarding capital contributions and that owners became responsible for taxes, maintenance, and insurance associated with the property following tenant default.[64] These allegations describe traditional incidents of direct real-property ownership and are consistent with the statutory exclusion for "an undivided fractionalized long-term estate in real property."[65] These allegations support the conclusion that the Romeoville TIC interests fall within the category of real-property interests excluded from the UUSA's definition of a security.

Accordingly, Plaintiffs' Third, Fourth, and Fifth Causes of Action should be dismissed.

---

[60] Utah Code Ann. § 61-1-13(ee)(ii)(C).

[61] *Wilson v. Millcreek Properties*, LLC, No. 2:24-cv-00624-TC-CMR, 2025 WL 2256685 at *12 (D. Utah Aug. 7, 2025).

[62] SOF ¶ 17.

[63] SOF ¶¶ 18–19.

[64] SOF ¶¶ 20–21.

[65] Utah Code Ann. § 61-1-13(ee)(ii)(C). *See Wilson*, 2025 WL 2256685, at *12.

B.        Plaintiffs fail to specify what other state law claims apply.

Rule 9(b) requires a Plaintiff making an allegation of fraud to state with particularity the circumstances giving rise to the fraud. To meet the requirements of Rule 9(b), a plaintiff must "indicate the state statutes under which they seek relief."[66] This is crucial to due process because the relevant states' laws vary as to their elements for claims asserted for primary liability versus indirect liability.[67] Thus, simply referencing only the state or chapter or article of the statute is not enough.[68]

Plaintiffs only explain their theory for liability of Defendants under Utah law. For remaining state securities claims, they only vaguely reference state statutes passively in a footnote, stating "Applicable state law regarding securities fraud includes at least the following statutes: Illinois, 815 ILCS 5/8; Florida, Fla. Stat. § 517.12; Utah Code § 61-1-3; and New Jersey, N.J. Stat. § 49:3-56."[69] Each statute differs with regards to its language and applicability, yet Plaintiffs make no attempt explain or plead the theories and requirements of each state claim. Without explanation or pleaded theories, Plaintiffs provide no notice for which state statutes they allege the Colliers Defendants violated or how. Such cursory and bare-bone pleadings cannot possibly meet the heightened requirements of Rule 9(b).

---

[66] *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260 (S.D.N.Y. 1991); *Wilson v. Millcreek Properties*, LLC, No. 2:24-cv-00624-TC-CMR, 2025 WL 2256685 at *12 (D. Utah Aug. 7, 2025).

[67] *See Baston v. Rim San Antonio Acquisition, LLC*, 2016 WL 6901312 at *16 (S.D.N.Y. Nov. 22, 2016).

[68] *Id*.

[69] FAC at ¶ 483, Fn. 2.

**VII.    Plaintiffs Vishwa Khanna, Melody Squires, Karl Bodily, Nick Kaprelian, and Danielle Kaprelian cannot maintain their actions for elder abuse.**

Utah Code § 26B-6-213 explicitly limits the private right of action for elder abuse to vulnerable adults who suffer harm or financial loss due to exploitation. Utah Code Ann. § 76-5-111 defines an "Elder adult" as "an individual 65 years old or older." Under Utah law, "a member [of an LLC] has no interest in specific property of an LLC."[70]

Here, the FAC makes clear that Vishwa Khanna did not purchase a TIC, but rather the TIC was purchased by Top Caliber Ventures, LLC.[71]  Similarly, Melody Squires did not purchase a TIC, the TIC was purchased through the Squires Family Trust.[72] Utah law is clear that claims must be prosecuted by the real party in interest.[73]  In the present case, Top Caliber Ventures, LLC and the Squires Family Trust are the real parties in interest, but they do not have standing to bring a claim for elder abuse under Utah Code § 26B-6-213. The statute limits standing to vulnerable adults who suffer harm of financial loss as a result of exploitation by a perpetrator.[74] Since neither an LLC nor a Trust is a "vulnerable adult" under Utah Code § 26B-6-213 or Utah Code § 76-5-111, these entities lack standing to pursue an elder abuse claim against the Colliers Defendants. Accordingly, Vishwa Khanna and Melody Squires' claim for elder abuse and any request for damages under Utah law must be dismissed.

Further, the FAC does not allege that Karl Bodily, Nick Kaprelian, or Danielle Kaprelian were 65 years or older at the time they purchased their respective TIC.[75] Indeed, Plaintiff does not

---

[70] *In re McCauley*, 549 B.R. 400, 410 (D. Utah 2016); *see also CFD Payson, LLC v. Christensen,* 361 P.3d 145, 148 ¶9 (2015).
[71] FAC at ¶¶ 306 and 314.
[72] FAC at ¶¶ 307 and 314.
[73] UT. R. Civ. P. 17(a); Fed. R. Civ. P. 17(a).
[74]  *Id*.
[75] FAC at ¶¶ 74 and 75.

allege that these individuals were vulnerable adults under Utah Code § 26B-6-213 or Utah Code Ann. § 76-5-111. Therefore, Plaintiff's elder abuse claims should be dismissed with respect to Karl Bodily, Nick Kaprelian, and Danielle Kaprelian because these individuals were not vulnerable adults as defined by Utah law.

**VIII.    Plaintiffs cannot maintain their aiding and abetting tortious conduct claim because no such cause of action exists under Utah law.**

Plaintiffs cannot show that an aiding and abetting claim with respect to fraud exists under Utah law.[76]  Indeed, Plaintiff can point to no Utah authority that supports the existence of a cause of action for aiding and abetting with respect to an underlying claim for fraud as described in the FAC. Plaintiffs twelfth cause of action should be dismissed accordingly.

**IX.    Plaintiffs' RICO claims are barred because alleged fraud in the purchase or sale of securities cannot give rise to a RICO claim.**

Plaintiffs' fifteenth and sixteenth causes of action against the Colliers' Defendants allege violations of 18. U.S.C. § 1962 ("RICO"). The FAC alleges the Colliers Defendants' purportedly fraudulent conduct with respect to the sale of TIC interests as securities constitutes RICO violations.[77] Section 1964(c) provides "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962."[78]

---

[76] *See Coroles v. Sabey*, 2003 UT App 339, 79 P.3d 974, 984 n.20 (declining to reach the issue of whether aiding and abetting fraud claims exist in Utah after the trial court dismissed such a claim on the grounds that it was not cognizable under Utah law*); see also Rabo Agrifinance, Inc. v. Bliss*, 227 F. Supp. 3d 1249, 1253 (D. Utah 2017) ("Utah courts have not yet recognized a claim for aiding and abetting fraud."); *DiTucci v. Ashby*, No. 2:19-CV-277-TC-PMW, 2020 WL 956890, at *5 (D. Utah Feb. 27, 2020) ("[T]he court is not convinced that aiding and abetting fraud is even a permissible cause of action.").

[77] FAC at ¶¶ 585-599.

[78] 18 U.S.C. § 1964(c).

Here, Plaintiffs allege that the TIC interests in the Romeoville Property are securities and the Colliers Defendants engaged in fraudulent conduct with respect to Plaintiffs TIC interests.[79] Therefore, the plain language of § 1964(c) precludes Plaintiffs from bringing their fifteenth and sixteenth causes of action. Plaintiffs cannot classify the TIC interests in the Romeoville Property as securities for purposes of their first, second, third, fourth, and fifth causes of action while simultaneously arguing that the TIC interests are not securities with respect to § 1964(c). Accordingly, Plaintiffs' RICO claims are barred under the plain text of § 1964(c).

**X.   Plaintiffs allege insufficient facts to support their negligence cause of action against Matthew Hawkins, Gil Borok, and David Josker.**

Under the *Twombly/Iqbal* pleading standard, courts take a two-prong approach to evaluating the sufficiency of a complaint.[80] The first prong of the test requires the court to identify which pleadings "are not entitled to the assumption of truth."[81] This includes "legal conclusions" as well as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[82] The second prong of the test requires the court to "assume th[e] veracity" of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief."[83]

Here, Plaintiff's FAC pleads no facts giving rise to an inference of negligence on behalf of Matthew Hawkins, Gil Borok, or David Jokser. With respect to Gil Borok and Matthew Hawkins, the only facts provided in the FAC are the location where each Defendant resides and their professional positions within Colliers.[84] No specific facts plausibly alleging negligence are

---

[79] SOF ¶ 22; FAC ¶¶ 443-55.
[80] *Iqbal,* 556 U.S. at 678–79, (1937).
[81] *Id*. at 679, (1937).
[82] *Id*. at 678, (1937).
[83] *Id*. at 679, (1937).
[84] FAC at ¶¶ 9-11.

provided in the FAC. The only factual allegations giving rise to Gil Borok and Matthew Hawkins's alleged negligence are found in Plaintiffs' thirteenth cause of action and are entirely conclusory. Plaintiffs essentially ask this Court to imply that Matthew Hawkins and Gil Borok are liable for negligence based on other factual allegations regarding Colliers' employees. Such barebones legal conclusions are insufficient to meet the pleading standard in Rule 12(b)(6). Plaintiffs allege no specific facts in which this Court can infer negligence on behalf of Gil Borok and Matthew Hawkins, and Plaintiffs' thirteenth cause of action should be dismissed with regard to these Defendants.

Similarly, Plaintiffs allege no facts that give rise to an inference of David Josker's negligence. Plaintiffs' FAC includes David Josker's place of residence, his position within Colliers, and that he approved draw payments for sales agents selling TIC offerings through the Colliers/Long TIC Program.[85]  These are the only three facts alleged in the FAC that refer to David Josker. Plaintiffs ask this Court to infer David Josker's negligence on the sole basis that he is a high-ranking Colliers employee. No other facts giving rise to negligence are alleged, and the FAC's allegations are entirely conclusory. Plaintiffs similarly fail to meet the 12(b)(6) pleading standard regarding David Josker's alleged negligence.

---

[85] FAC at ¶¶ 14-16.

18

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their Motion to Dismiss.

DATED:  July 28, 2026                    **LEWIS BRISBOIS BISGAARD & SMITH** **LLP**


By:  */s/ Douglas C. Smith*
William B. Helfand
Douglas C. Smith
Andrew R. Welch
*Attorneys for Defendants Colliers International Intermountain, LLC, Colliers International Holdings (USA), Colliers International Group, Lew Cramer, Matthew Hawkins, Gil Borok, and David Josker*

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of July, 2026, I caused a true and correct copy of the foregoing **DEFENDANTS COLLIERS INTERNATIONAL GROUP, INC., COLLIERS INTERNATIONAL HOLDINGS (USA), INC., COLLIERS INTERNATIONAL INTERMOUNTAIN, LLC, GIL BOROK, MATTHEW HAWKINS, DAVID JOSKER, AND LEW CRAMER'S MOTION TO DISMISS** to be electronically filed via the CM/ECF system, which sent notification of such filing to all counsel of record in this case.


/s/ Belle Wade